## Smith v. Commonwealth.

### (Decided June 23, 1922.)

## Appeal from Harlan Circuit Court.

1. Rape—Evidence.—Upon a trial for attempted rape upon a female under 12 years of age, her statement to an aunt more than two years after the alleged attack, accusing defendant thereof, held incompetent, and prejudicial where she is contradicted in toto by the defendant and in part by the only person, a playmate of her own age, to whom she told of the attack previous to telling the aunt.

2. Rape—Evidence.—The verdict of guilt was not flagrantly against the evidence where defendant's guilt of attempted rape was affirmed by the prosecuting witness and denied by him, even though she did not tell of it for more than two years except to a playmate under promise of secrecy.

3. Rape—New Trial—Newly Discovered Evidence.—Newly discovered evidence that the prosecuting witness had voluntarily submitted herself to three youths at the time defendant is charged with the attempted rape, and in such a way as to account for the swollen and lacerated condition of her person that she attributes to an attack by the defendant, held sufficient reason for a new trial, and that the trial court committed prejudicial error in refusing same for this reason alone.

J. S. FORRESTER and F. L. HUFF for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Appellant, a married man with a family, was charged by indictment on January 12th, 1922, with the crime of detaining a female, Mary Scott, against her will. At the following April term of court that indictment was quashed and upon a resubmission to the grand jury another was

returned accusing him of attempting to rape Mary Scott, a female under twelve years of age.

The evidence of Mary Scott, who was only twelve years of age when she testified, fully sustained the latter charge as it would have the former, and if true established the following remarkable facts in connection therewith.

That nearly four years elapsed after the crime was committed before any kind of proceedings were instituted against the defendant; that she never even mentioned the matter to any one, except a playmate of about her own age under promise not to tell it, for more than two years, or until after defendant had been accused and acquitted of a like charge preferred by another, and that she continued to go to the home of defendant twice a day for milk, where she frequently found him alone, for more than a year thereafter, although she was so swollen and lacerated by defendant's attack that she was scarcely able to walk for a week or more and required the services of a physician.

She testified that the crime was committed in the home of defendant when he was there alone and when accompanied by her playmate, Della Brock, she had gone to his house for milk; that defendant told Della to remain on the porch, took her in the house, locked the door, put his hand over her mouth, committed the crime and then filled her bucket with milk, telling her not to tell any one and daring her to do so; that she told Della what had happened, on her way home, but did not mention it to any one else because defendant told her not to tell it and dared her to do so; that she objected to going back to his house for milk thereafter, but that her aunt, with whom she lived, made her go.

In corroboration of her testimony as to her injuries, but not as to what caused them, is the fact established by her aunt, her mother and the doctor who treated her that in March, 1918, when she says the attack occured, she was swollen and lacerated in the manner she now says resulted from the attack. The doctor admits he did not ask her or her aunt or her mother the cause of her trouble, and neither of the latter testified whether they asked her or not.

The only evidence tending even slightly to corroborate her testimony that defendant had caused this trouble by an attack upon her, if it does, is the testimony of the aunt and Della Brock, who testified that she told them of the

occurrence. She did not tell the aunt, however, until more than two years thereafter, and this evidence admitted over defendant's exception was, we think, clearly incompetent. Della Brock did not say when Mary told her about the matter, for which reason we think this, too, to which, however, no objection was interposed, was incompetent, for such evidence should be much more nearly connected with the commission of the crime than is that of either of these witnesses. Otherwise one witness by herself and through the mouths of as many as she may have elected to tell her story for reasons that may have later actuated her in preferring such a charge, might fairly overwhelm the defendant, who alone could deny it and who certainly would not be permitted to sustain his denial by proof of anything he had told others.

The fact has long had judicial recognition that no charge in the calendar of crimes is so readily believed and so difficult to disprove; and for this reason, incompetent evidence is peculiarly liable to be prejudicial to the defendant upon such a trial.

The defendant denied the charge *in toto,* and he is corroborated and Mary is contradicted by Della Brock in so far as the latter's waiting on the porch is concerned, or that the defendant ever made such a request of her, or that Mary ever went into the house alone upon any occasion when she was present, before telling her of the attack.

The only grounds urged upon us for reversal of judgment of five years' confinement in the penitenary as provided in the verdict are, the admission of incompetent evidence and that the verdict is flagrantly against the evidence.

We can not say that the verdict is flagrantly against the evidence, since the evidence as to defendant's guilt or innocence depends primarily, if not entirely, upon whether the prosecuting witness or he is to be believed, and this was peculiarly a question for the jury where the one positively affirmed and the other just as positively denied guilt, unless the evidence of the former is utterly discredited and without probative value by reason of her having remained silent so long, which certainly is not true, especially where a condition that might have resulted from such an attack is clearly established and not otherwise accounted for.

We are, however, inclined to think that, in view of the doubt that silence necessarily creates as to defendant's guilt, the admission of the incompetent evidence of the aunt, already pointed out, should be held prejudicial and sufficient to demand another trial free from such error; and so, too, that the hypothetical questions propounded to the doctor can be more carefully worded so as to avoid the possibility of the criticism that by answering them the doctor was giving direct evidence of defendant's guilt, about which he knew nothing, rather than impersonal expert evidence as to what might have caused the conditions described.

Besides we find from the record that the ground of newly discovered evidence was urged for a new trial, and in our judgment erroneously overruled, which we think furnishes ample reason by itself for reversal, even though not presented in brief for some reason which we do not understand. In support of this ground, the defendant filed his own affidavit that he had learned since the trial, and he had no means of knowing it before, that in March, 1918, the time fixed by the prosecuting witness for the commission of the crime by defendant, she voluntarily submitted herself to three youths in such a way as to account for her swollen and lacerated condition at that time, and his affidavit is fully sustained by the affidavits of two of these boys.

That this evidence was of such importance as that it might have affected the verdict despite the worth of and weight usually given to such evidence, we do not doubt, and that its discovery before the trial was not due to any lack of diligence upon defendant's part is proven and not denied.

Wherefore the judgment is reversed with directions to grant defendant a new trial.